CHATTANOOGA STATION COMPANY v. CITY OF CHATTANOOGA.

Eastern Section.    April 16, 1932.

Petition for Certiorari denied by Supreme Court, October 14, 1932.

118

Joe V. Williams, of Chattanooga, for plaintiff in error.

Joe Anderson, City Attorney, of Chattanooga, for defendant in error.

THOMPSON, J. This case, which was tried on certiorari in the Circuit Court without the intervention of a jury and appealed to this court, involves the validity of a $6,000, special assessment made by the City against the Station Company's property on account of the opening, widening and extending of Market Street. The Circuit Court affirmed the assessment and dismissed the Station Company's petition for certiorari and supersedeas. The Station Company has appealed to this court and has assigned errors.

Prior to the improvements herein involved, Market Street extended from the Tennessee River southwardly to Main Street, which extended east and west. It stopped at Main Street.

The Station Company's property fronted 356 feet on the east side of Market Street and extended back or eastwardly several hundred feet. The south line of its property was about 150 feet north of Main Street.

The City desired to extend Market Street across Main Street and southwardly to the City limits, and it also desired to extend 23rd Street, which was south of and parallel to Main Street, from Central Avenue to Rossville Boulevard—both improvements to be by one resolution and in one improvement district—and under and pursuant to the provisions of Chapter 457 of the Private Acts of 1927.

The resolution was introduced on November 13, 1928, passed second reading on December 11, 1928, and third and final reading on January 15, 1929. It created Improvement District No. 4, "for the purpose of opening, widening and extending Market Street from Main Street southwardly to the city limits; and, opening and extending Twenty-third (23rd) Street from Central Avenue to the Rossville Boulevard, as shown by blue prints hereto attached and made a part hereof." It described the real estate which it declared to be benefited by the improvement as follows:

"Beginning at the point where the Southern Railway and the A. G. S. Railway tracks cross Market Street, all property fronting on the east and west sides of Market Street to Main Street; and all property fronting on the east and west sides of Market Street as proposed to be extended from Main Street to the City limits; and all property fronting on the north and south sides of Main Street from Long Street to Rossville Avenue; and all property on the north and south sides of Twenty-third (23) Street, as proposed to be extended, from Central Avenue to Rossville Boulevard."

Since the Station Company's property was south of the point where the Southern Railway and the A. G. S. Railway tracks crossed Market Street, it was included in the property declared by the resolution to be benefited, although it was, as stated, north of Main Street and did not abut on the part of Market Street to be opened, widened and extended.

We might state here that in our opinion the words: "Beginning at the point where the Southern Railway and the A. G. S. Railway tracks cross Market Street, all property fronting on the east and west sides of Market Street to Main Street," constituted a description of the property benefited sufficient to comply with that part of Section 6 of the Act which provides as follows:

"The Board of Commissioners shall in the resolution designate the property which it deems will be specially benefited thereby, by metes and bounds, or by other general descriptions."

While the resolution was pending, and on December 22, 1928, a notice was published that a meeting of the municipal commission would be held on January 8, 1929, to hear objections of all interested persons to the final passage of the resolution. This notice used the

language of the resolution in describing the district, i.e., "opening, widening and extending Market Street from Main Street southwardly to the city limits, and opening and extending Twenty-third Street from Central Avenue to the Rossville Boulevard, as provided in said resolution." It did not attempt to describe all of the property that the proposed resolution declared to be benefited. We observe that Section 8 of the Act did not require it to do so. The meeting was held on January 8, 1929, but was postponed until January 15, 1929. At the meeting on January 8, 1929, the Station Company's attorney, Hon. Joe V. Williams, appeared and entered verbal objections to the final passage of the resolution. However, no written objections were filed. As stated, the resolution passed third and final reading on January 15, 1929.

It perhaps should have been stated that the plans showed only the district itself. They did not attempt to show the property of the Station Company, as they did not attempt or purport to show all the property that the resolution declared would be benefited by the improvement.

At the January 29, 1930, meeting of the Board of Commissioners the Viewers were appointed, and on March 30, 1929, these Viewers filed their report. Insofar as the property benefited was concerned the report was tabulated—each page having six vertical columns with the following headings: "Location," "Owner," "Frontage," "County taxable value," "Assessment rate," and "Total Assessment." As to most of the property all six of these columns had entries thereon. But as to the Station Company property only the columns headed, "Location," "Owner," "Frontage," and "Total Assessment," had entries thereon. The column headed "Location" had the words "Market Street-East Side." The column headed "Owner" had the words "Chattanooga Station Co." The column headed "Frontage" had the figures "356," and the column headed "Total assessment" had the figures "6,000." The columns headed "County taxable value," and "Assessment rate," were left blank. We suppose this was because the State authorities, instead of the County Tax Assessor, made the assessment of this Station Company property.

On April 9, 1929, notice, which we think was in full compliance with Section 11 of the Act, was published that protests and objections, etc., would be heard at a commission meeting to be held on April 30, 1929. The Station Company filed written objections and protests and its attorney appeared at said meeting and argued the same—as did other property owners and their attorneys. The commission took the protests under advisement, and at its meeting on

May 7, 1929, overruled all of said protests except two which are immaterial. As thus slightly modified, the report of the viewers was affirmed, and it was duly resolved that the work be proceeded with in accordance with the plans theretofore prepared by the City Engineer and approved by the Board.

At a Board meeting on May 14, 1929, a resolution was duly passed authorizing the issuance of $216,000, of bonds, etc.

On May 15, 1929, which was of course, within ten days after the meeting of May 7, 1929, the Station Company filed its petition for certiorari and supersedeas.

After examining the resolution, the plans, the minutes of the meetings of the Board of Commissioners, the proofs of the publications of the notices, and the report of the viewers, we think that the proceedings were in substantial compliance with the Act. And we think there was no fatal failure of description of the Station Company's property. The actual assessment roll is of course not before us as the petition for certiorari and supersedeas was filed within ten days after the confirmation of the report of the viewers and before the work was even begun. We have no reason to believe that the assessment roll did not contain a sufficient description.

The Station Company, among other defenses, makes the following:

On April 11, 1928, the Commission passed a resolution creating Improvement District No. 3, which included the opening, etc., of Market Street from Main Street south to Twenty-third Street (only a part of the distance which Improvement District No. 4 opened it), and also nine or ten other streets—all covering a large area of land in South Chattanooga. The proceedings under this resolution, which went as far as the report of the Viewers, disclosed to the Commission that the cost of the improvements would be so much more than the amount that could be assessed against the property owners that the Commission decided to abandon the project. Accordingly, on November 13, 1928, the Commission passed (on third and final reading) the following resolution:

"Whereas, for good and sufficient reasons further action under Resolution No. 1337, providing for the creation and improvement of Improvement District No. 3 in the City of Chattanooga, Tennessee, under the Metropolitan Improvement Law, is by this Board of Commissioners deemed inadvisable:

"Be it now resolved, that said Resolution No. 1337 be, and the same is hereby repealed and rescinded, and no further proceedings will be had thereunder."

It seems that the Viewers under Resolution No. 1337 had reported that no property north of a point 140 feet north of Main Street would

be benefited by the improvement. This of course excluded the Station Company's property from the property benefited, as its south line is about 150 feet north of Main Street.

The Station Company insists that this finding of the Viewers that its property was not benefited by the proposed improvements under District No. 3, is res adjudicata of the City's right to assess its property for benefits under District No. 4, and that the City is estopped to insist that its property is benefited by the improvements under District No. 4. Also, that while the City may have had the right to modify, etc. its resolution and proceedings as to District No. 3, it did not have the right to repeal said resolution and start all over again as to Market Street.

It seems to us that the very statement of the proposition refutes it. District No. 3 included nine or ten streets and a large area, and it did not purport to open Market Street as far south as the City limits and connect it up as District No. 4 does. We do not think the report of the viewers which was not confirmed by the Board of Commissioners could work an estoppel against the City. Neither do we think it is res adjudicata of the question now involved under District No. 4. We have considered the arguments of able counsel for the Station Company on the question but in our opinion none of them are well taken.

The Station Company, in this court, seeks to make the question that the resolution and proceedings here involved only covered the opening, widening and extending of the street, and did not cover and include the grading and paving of it; that the opening, widening and extending of the street without the grading and paving of it was only a part of the entire improvement to be made and could not benefit it or any other property owner, and that the City had failed to prove with any degree of certainty at all that the grading and paving would ever be done. Had this matter of defense been mentioned or relied upon in the petition for certiorari or in any other way in the trial court, we have no doubt the City Attorney could have introduced certified copies of the resolution with reference to the grading and paving, or could otherwise have proved with certainty that the grading and paving would be done. We think it is now too late to raise such a question in this court.

The main contention of the Station Company is that although its property, as land, may have been increased in market value by the improvement, yet said property, as a passenger depot and passenger terminal, the only use to which its property was being put, was not benefited by the improvement. It, therefore, insists that under the better authorities the City had no right or power to make the assessment.

The Station Company is a corporation and owns and operates the passenger depot and terminal in question. It has done so for twenty years. We suppose it derives its income by leasing its facilities to the railroads which use it. Its depot sits back (east) about fifty feet from Market Street, and in this fifty feet there is a semi-circular driveway over which vehicles pass to the front entrance of the depot—also a walkway over which pedestrians can pass to said front entrance. The depot seems to be a large brick building but its dimensions do not appear. Just east of the depot building are the sheds and tracks. Just how much land the Station Company owns does not appear, but the record shows beyond dispute that the fifty feet and the land upon which the depot building is situated was increased in market value, as land, by the improvements in a sum far exceeding the $6,000, fixed by the Viewers. The record also shows that to some extent the opening of the two streets will make it easier for people in certain sections of the City to reach the depot.

The last paragraph in Section 15 of the Act (which paragraph is we think applicable to the Station Company's property) is as follows:

"The property and rights-of-way of street, electric or steam railroad lying with (in) an improvement district, and not assessed in accordance with the provisions of this section, but which shall be benefited by the improvement shall be assessed as the property of other individuals."

We think the word "benefited" was used in this paragraph in its ordinary acceptation, and that the legislature meant that railroad property, such as the property here involved, which was increased in market value should be assessed.

We realize, of course, that there is a conflict in the authorities on the question, and we commend the industry and skill of counsel for the Station Company in finding and citing to us every authority that could be found on his side, but in our opinion, and after examining the authorities, we think the better reasoning thereof supports the validity of the assessment.

For the foregoing reasons, the assignments of error will be overruled and the judgment of the trial court will be affirmed, with costs.

Portrum and Snodgrass, JJ., concur.